UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
GIUSEPPE PRINCIPE,                             :
                                               :
                              Plaintiff,       :     **MEMORANDUM DECISION AND**
                                               :     **ORDER**
                - against -                     :
                                               :     25-cv-3311 (BMC)
WELLS FARGO BANK, N.A.,                         :
                                               :
                              Defendant.        :
--------------------------------------------------------- X

**COGAN**, District Judge.

On the parties' cross-motions for summary judgment, the dispositive question is whether

plaintiff is exempt from the overtime benefits of the FLSA and NYLL under the "computer

professional" exemption or the "administrative" exemption. Because there are genuine disputes

of material fact concerning plaintiff's primary duty, summary judgment is denied as to the

applicability of the computer professional exemption. However, because plaintiff does not

exercise discretion and independent judgment in the way contemplated by the administrative

exemption, summary judgment is granted to plaintiff with respect to that exemption.

## BACKGROUND

Plaintiff has worked in trader voice support for Wells Fargo[1] and its predecessor,

Wachovia, since 2006. Plaintiff learned to perform his work through on-the-job training; he did

not receive a formal engineering education and the highest level of education that he completed

was junior high school.

---

[1] Plaintiff incorrectly named Wells Fargo & Company as the defendant in his complaint. The Court *sua sponte* amends the caption to accurately reflect defendant's identity, which is Wells Fargo Bank, N.A. See United States v. Edwards, 241 F.R.D. 146, 148 (E.D.N.Y. 2007) (recognizing that "the United States Court of Appeals for the Second Circuit often makes similar corrections *sua sponte*, and without citation to any specific Rule or other authority" (collecting cases)).

Before his promotion in February 2025, plaintiff was a Senior Systems Operations Engineer in the Voice Implementation Support ("VIS") group.  Senior Systems Operations Engineers provide system support for technical issues and initiatives related to voice systems – principally, by responding to one-off requests for so-called "MACDs" (moves, adds, changes, and deletes).  A "move" involves physically moving telephony equipment between locations; an "add" involves adding users, lines, programs, or devices into an existing telephony system; a "change" involves modifying labels, line descriptions, or user assignments within an existing telephony system; and a "delete" involves removing users, devices, or programming from an existing telephony system.  In the role of Senior Systems Operations Engineer, plaintiff was classified as a non-exempt employee, making him eligible for overtime compensation.

On February 9, 2025, plaintiff was promoted to Lead Network Engineer with an annual salary of $141,564.80.  Lead Network Engineers lead the review and implementation of complex technical issues involving voice and other technology systems.  Per the job description, Lead Network Engineers are tasked with, among other things, maintaining and troubleshooting systems; researching trends; recommending process improvements; managing complex migrations to production, installations, and configurations; and assessing risk and regulatory compliance.  Plaintiff appears to have performed *some* iteration of each of these tasks.  However, there are several engineering-level responsibilities outlined in the job description that plaintiff has never performed, such as designing systems; identifying and resolving infrastructure-level or root-cause technical issues; placing systems into production; and performing system migrations.

After plaintiff was promoted, his daily duties did not change, and he did not receive additional supervisory responsibilities, policymaking authority, or hiring and firing authority.  In plaintiff's view, his promotion was entirely nominal.  Nonetheless, because of the promotion,

plaintiff became classified as an exempt employee, making him ineligible for overtime compensation.

According to Virginia Biederman, plaintiff's former direct manager, plaintiff was promoted because the role of Lead Network Engineer more accurately reflected the work that he was already doing, and because she viewed plaintiff's skillset and knowledge as "well-above" that of his VIS teammates.  In fact, in the years leading up to plaintiff's promotion, Biederman gave him consistently positive evaluations.  In a 2022 mid-year review, Biederman wrote that she saw plaintiff as a leader on the VIS team and that peers and users looked to him for guidance. Plaintiff's self-evaluation echoed Biederman's.  Biederman and plaintiff also agreed in that review that plaintiff managed a large workload, handled circuit and private wire requests (*i.e.*, setting up lines between two firms to enable traders to effectuate trades), supported MACD and project work among multiple office locations, and was eager to receive more responsibility and training.  Later reviews between 2022 and 2025 generally reflected the same positive sentiments about plaintiff's performance and the same understanding of plaintiff's responsibilities.

In summary, the record establishes that plaintiff:

- performs MACD work, including "project" MACD work such as planning and coordinating large-scale site moves;

- performs testing and troubleshooting work relating to voice systems and telephony equipment;

- assists with design and direction on trader voice products and circuits and maintains circuits;

- identifies technical gaps and helps implement the remediation;

- executes cost-saving and regulatory compliance measures;

- coordinates with vendors and other teams regarding installations, equipment changes, and troubleshooting issues, including arranging access to trading floors and facilitating vendor work;

- works with vendors to adapt their solutions to Wells Fargo's architecture; and

- manages the daily activity of the vendor resources at the Hudson Yards offices.

Notwithstanding, the parties diverge with respect to how they characterize plaintiff's role in each of these tasks. The parties also diverge with respect to how often plaintiff does any of these tasks.

Because plaintiff is paid a flat annual salary regardless of the number of hours he works and believes that he has been improperly classified as an exempt employee, he argues that he has been deprived of proper overtime compensation under both federal and state law. Defendant disagrees, contending that plaintiff is exempt from coverage under the FLSA and NYLL under the computer professional and administrative exemptions.

## DISCUSSION

I.      **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d

Cir. 1995).  Rather, "'[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586-87); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).  Indeed, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor."  Anderson, 477 U.S. at 256.

"The same standard of review applies when the Court is faced with cross-motions for summary judgment, as here."  Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citation omitted).  "When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration."  Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

## II.   Analysis

The FLSA and NYLL exempt certain categories of employees from their overtime requirements.  See 29 U.S.C. § 213(a); N.Y. Lab. L. § 651(5); see also N.Y. Comp. Codes R. & Regs. tit. 12 ("N.Y.C.R.R."), § 142-2.2 (borrowing exemptions from 29 U.S.C. § 213).  Because the NYLL "mandates overtime pay and applies the same exemptions as the FLSA," the Court will analyze the exemptions only under the FLSA for purposes of the instant motions.  Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 556 n.1 (2d Cir. 2012) (quoting Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010)).

"It is the employer that bears the burden to establish the applicability of an exemption under the FLSA." Flood v. Just Energy Mktg. Corp., 904 F.3d 219, 227 (2d Cir. 2018). "The question of how an employee spends his or her time working is one of fact, while the question of whether those work activities exempt him or her from the FLSA is one of law." Id. at 227 (citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986)). Of note, the exemptions are entitled to only a fair reading, as opposed to a narrow one. Id. at 228 (citing Encino Motorcars, LLC v. Navarro, 584 U.S. 79, 89 (2018)).

### A.    Computer Professional Exemption

The FLSA exempts "any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is":

> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
>
> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>
> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
>
> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and
>
> who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour.

28 U.S.C. § 213(a)(17). [2] The Department of Labor's regulations define "primary duty" as the employee's "principal, main, major or most important duty" and instruct courts to consider

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's

---

[2] As noted *supra*, the NYLL borrows this exemption via N.Y.C.R.R. § 142-2.2.

> salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).

A couple of matters are undisputed.  First, the parties agree that plaintiff's annual salary of $141,564.80 as a Lead Network Engineer exceeds the FLSA and NYLL's thresholds.  See 28 U.S.C. § 213(a)(17); 12 N.Y.C.R.R. § 142-2.14(c)(4)(ii)(d).  Second, the parties agree on some of the work that plaintiff performed, as set forth *supra*.

Although neither party dares to say so expressly, plaintiff performs both non-exempt and exempt work – the latter falling principally under § 213(a)(17)(A), which involves "appl[ying] [] systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications."  An employee who performs category (A) work makes analytical decisions about how the company's computer network should function.  Performing MACDs, on any scale, is not that.  But identifying technical gaps, implementing remediation measures, working with vendors to adapt their solutions to Wells Fargo's architecture, and assisting with design and direction on trader voice products and circuits in consultation with traders, is. This poses a complication: figuring out which type of work is plaintiff's "primary" work.  The Court cannot permissibly answer this question because a jury could reasonably answer it in favor of either side.

The parties disagree with respect to "the character of [plaintiff's] job as a whole," including "the relative importance of [plaintiff's] exempt duties as compared with other types of duties; the amount of time spent performing exempt work; [and plaintiff's] relative freedom from direct supervision."  29 C.F.R. § 541.700(a).  Plaintiff maintains that his job has always been primarily technical and operational in nature – that his work is primarily comprised of MACDs and other operational support work within established systems, procedures, approval structures,

7

and management directives.  On the other end, defendant maintains that plaintiff shifted away from routine MACD tasks and now spends most of his working time managing complex technical projects in coordination with traders and vendors and providing high-level technical and business guidance.

Ultimately, "the nature and complexity of [p]laintiff's responsibilities in this case is heavily disputed." Sethi v. Narod, 974 F. Supp. 2d 162, 180 (E.D.N.Y. 2013).  As the question of how plaintiff primarily spends his working hours is a genuine dispute of material fact, the Court has to leave it to a jury.

### B.    Administrative Exemption

The FLSA also exempts "any employee employed in a bona fide executive, administrative, or professional capacity."  28 U.S.C. § 213(a)(1).[3]  The Department of Labor's regulations specify that an "employee employed in a bona fide administrative capacity" includes any employee who is compensated no less than $684 per week, and whose primary duty is performing work "directly related to the management or general business operations of the employer" *and* "exercis[ing] [] discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a). As explained *supra*, plaintiff's salary exceeds the threshold.

Defendant says that plaintiff fits the bill.  First, his work directly supports business operations: he analyzes needs on the trading floor and recommends technical improvements, coordinates with external vendors, and helps identify cost-saving measures and ensure regulatory compliance.  Second, he exercises discretion and independent judgment: he has flexible work

---

[3] As noted *supra*, the NYLL borrows this exemption via N.Y.C.R.R. § 142-2.2 and expressly codifies an analogous exemption at N.Y. Lab. L. § 651(5) ("'Employee' ... shall not include any individual who is employed or permitted to work ... in a bona fide executive, administrative, or professional capacity").

hours, is encouraged to bypass procedures and recommend solutions, and manages and trains other team members.

However, it's clear to the Court that the way in which plaintiff exercises discretion and independent judgment is the way in which *any* employee exercises discretion and independent judgment: picking the best way to do something from a prescribed set of options, speaking up when he has a good idea but with no guarantee that it will be adopted, teaching less-senior coworkers how to do something, *et cetera*.  Plaintiff performs all of his work within existing systems and workflows created by others and does not formulate policies, determine operational priorities, design systems, create network architecture, or participate in management planning. To the extent that he helps save costs or ensure regulatory compliance, he's simply executing directives – the development of those measures is above his paygrade.  Based on the record before it, the Court agrees with plaintiff that he merely "exercise[s] technical judgment in carrying out assigned operational tasks" – he does not change how defendant does business, and he certainly does not have any say with respect to management policies.[4]

Thus, the Court concludes that the administrative exemption does not apply.

**CONCLUSION**

As set forth above, the parties' motions for summary judgment are denied as to the computer professional exemption, but plaintiff's motion for summary judgment is granted (and defendant's is denied) as to the administrative exemption.  Because it is still an open question as to whether defendant violated the FLSA, the Court does not resolve the issue of damages – either

---

[4] Although not dispositive, it is certainly probative that plaintiff's job (whether based on title or duties) is not among the administrative exemption examples listed in 29 C.F.R. § 541.203.  Also probative are the regulation's examples of what types of work are *not* exempt, such as work involving "use of skills and technical abilities in gathering factual information, applying known standards or prescribed procedures, determining which procedure to follow, or determining whether prescribed standards or criteria are met." Id. at § 541.203(j).  Although this description applies to a different type of job, it sounds just like plaintiff.

9

unpaid overtime or liquidated damages – at this time.  This case will be set down for a pretrial conference by separate order.


**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.


Dated:  Brooklyn, New York
        July 23, 2026